The next case called for oral argument is Perdue v. Village of Tower Hill. Counsel will be ready when you may proceed. Thank you, Your Honor. This is a case before counsel. This is a case about the assessment of attorney fees in a Freedom of Information Act matter. The plaintiff successfully prosecuted the claim and requested attorney fees in the amount of approximately $17,000. The consideration of the work that was performed by his two trial attorneys. The first trial attorney was at the beginning of the matter and expended fees that totaled $3,500. And the rest of the fees that were charged, approximately $13,500 of that, was charged by my firm. In the conclusion of the matter after Mr. Farr, the initial attorney, had withdrawn from the case. There was an affidavit of attorney fees that was provided, or there were two affidavits of attorney fees that were provided. One by Mr. Farr and one by my firm. There was no contest with respect to either the scope of the work that was identified in the affidavits for attorney fee. Was it itemized for hourly rate and all that? Yes. It'll be in the record, I believe. It is in the record. There was no contest with respect to the scope of the work that was performed. There was no contest with respect to the rate that was being charged. And there was no contest with respect to the total amount of the fee. The trial court took the matter under advisement and considered the affidavits and the briefs of the parties in making a ruling. And eventually ruled that $6,500 should be assessed as an attorney fee in the matter. It made two findings in that regard that caused it to make the determination that it did. The first one was that the matter should have been resolved sooner, and had it been resolved sooner, the fees would have been less. The other was that the relief that was granted was less than the relief that was requested. Let me address the latter issue first. The relief that was requested was the billing records and payments of the village of Tower Hill to its village attorney. And the original request requested all the billing records for, as I understood it, an indefinite period of time. At some point early in the process, before my involvement, when Attorney Barr was involved, and I noted in the record, there was a voluntary modification. This was after the refusal. The request was made, the request was refused, litigation was initiated by Attorney Barr. And as that matter was progressing, there was a voluntary modification of the request to limit the request to seven years' worth of the production of the records. The records weren't produced. The litigation continued on to the point where we got up to the time of trial in November of now, I think, 2013. Although my numbers could be 2014. But it was, we got up to the time of trial, had a meeting with the judge, tried to resolve some of the issues so that we could streamline everything before the trial started. And came to the conclusion that the plaintiff would again modify its request and request only five years' worth of records. Another, it was a voluntary modification that was made on behalf of the plaintiff. The records were still not disclosed, other than the fact that the agreement was reached between all the parties in the court at the time, that those five years' worth of records would be disclosed to the court for the court to determine whether they should be disclosed. And if they were going to be disclosed, whether there was any redaction of those records that needed to be made in order to accommodate an attorney-client privilege. The court did make that consideration, did disclose all the records, or was in the process of disclosing all the records, when counsel for the village indicated that he felt that some of it needed to be redacted for attorney-client privilege reasons. And the court then conducted another hearing to determine, or another review of the records, in order to determine whether some ought to be redacted or not. And eventually redacted some of those five years' worth of records that were eventually disclosed. And then made that disclosure to the plaintiff. This was a disclosure of wages for somebody, wasn't it? It was a disclosure of attorney fees. Oh, I thought, the FOIA, though, was about what? The FOIA was about the attorney fee. Oh, city attorney fees. City attorney fees. Aren't those published? I believe that they are published. Are they supposed to be published? I'm not sure in this case whether they actually were or not. Because I think in my city they're published. My recollection is, just from my communication with the municipalities that I deal with, that it is published. It's part of the minutes of the various meetings, and all of it. But there's no law requiring publication, or is there? You know, I don't know whether there is or not. I just know I see it when they show the budget and the bills that are being paid and being considered by the board. Mr. Graham, the court didn't make any breakdown of whose attorney fees they were awarding. No, they did not. It was just a general award. And I could not find, I know this isn't the record, but you have a pretty good-sized appendix. But I didn't see your firm's attorney fees. I don't think I put the affidavit of attorney fees in our appendix, Your Honor. Okay, it's in the record. It is in the record. Yeah, what I included in the delay in the record was that we needed to get the FOIA, the response, the disclosure. And I wanted to put that in the appendix. And it didn't come with the record when we first received it, so we had to request it later. Okay. And they produced it subsequently. So the bottom line with respect to that particular issue is that in this case, the records that were requested were actually exactly the ones that were eventually disclosed. It happens that the initial records request requested far more records, but there was a voluntary modification of that. Never, never was a determination by a court that any exemption that applies under the statute or any defense that was raised by the defendant applied to restrict what was that they were going to have to disclose to us. But there was more requests. Some of the initial requests had been requested under earlier FOIAs, right? That's hard to tell. And the reason I say that is because when you look at the earlier requests, they're not worded all the same. They requested things for different periods of time. And some of those periods of time overlap. And I think that was the reason why initially when Attorney Farr was involved in the case, that they made this voluntary modification to limit the request to a seven-year period of time. But I understand that there was an overlap on some of the requests that had been made previously. So eventually, though, the request that was responded to and that the judge ordered production for was the request that was actually the one that was made and would have gone to trial. So to say that the plaintiff in that case received less than what they requested is, I suppose we could argue it as a matter of semantics, but the bottom line is what he walked into the courtroom requesting is what he walked out of the courtroom with in his hand. It was exactly the same. Now, the other issue that the court addressed was whether the matter should have been resolved sooner because had it been resolved sooner, the attorney fees would have been less. I'm not sure that that's necessarily the case in every case. I understand her rationale for saying it. But there's three things that I think we have to bear in mind in assessing whether that is a legitimate consideration in determining the amount of attorney fees that should be awarded in a freedom of information case. The first is we have to bear in mind that it takes two to tango and that Mr. Perdue, the plaintiff in the matter, is the records requester, and when he's required to initiate litigation in order to get the records that he's seeking to review, that litigation that he initiates is going to last as long as the municipality refuses to provide the records. So he can argue and argue and argue and argue and argue forever. Of course, that increases the cost of litigation and the length of time that the matter is going to proceed at trial. But at the same time, until he gets the records, which is controlled exclusively in this case by the village, all he can do is sit there and argue. The second thing that's important in that is that this matter was decided on the basis of an affidavit, an argument that was provided in a written form to the judge. The affidavit that we presented showed what our billing rate was, shows what the total amount of the fee was, shows the scope of the work, and nobody objected to any of that. In addition to that, nobody filed any countervailing affidavits. There was no other evidence presented that would indicate that that attorney fee that was requested was inappropriate in any respect or for any reason, given the nature and the scope of the work that had to have been performed. So in this particular case, we believe that the judgment should have been entered consistent with what the evidence was in the case. Probably the greatest reason why the amount of the award of attorney fees was inappropriate in this case, though, is the policy of the state of Illinois, which is stated in some of the other cases that decide these issues, and that is an award of attorney fees in a Freedom of Information Act case is not a judge in order to provide a reward to the prevailing plaintiff or a penalty as against the municipality. The reason for an award of attorney fees in a Freedom of Information Act case is to avoid, in the words of the cases that I've read, are the insurmountable obstacles that the payment of attorney fees creates with respect to litigants who are seeking to enforce their rights for the production of municipal records. If you've got to pay an attorney to go into court and enforce the right that you have to receive something that the statute says you have the absolute right to receive, then obviously that litigant is going to be considering his finances and it chills the opportunity that he has in order to enforce his rights. At the same time, on the other side of the fence, if we know that the litigant, when he makes the request and wants to enforce his right, is stuck in a position where he can't recover what he has to pay for attorney fees, it puts the village in a position, or the municipality in a position, where the municipality can run them around as much as they want. They can spend as much time and effort as they want to in denying him the records until he gets to the point where a judge eventually orders it. And then if they're only partially responsible for the recovery of that fee, we have completely ignored the purpose of the statute, which is to remove that particular obstacle. Now, what happened in this case by the judge reducing that fee is she has, in effect, removed that situation from her consideration. She has said to the plaintiff here, I understand this costs you a lot of money to get here because the defendant didn't give you the information and refused to give you the information and ran you around for a lot of different reasons, most of which were probably either collateral to or irrelevant to the discussion. But we're not going to compensate you for that. We're not going to make them provide you any kind of consideration for the fact that you had to bear that expense in order to get to the point that you had a right to get to to start with. And that's not what the statute provides. So what we ask the court to do is to consider the matter and reverse the judge's decision limiting the award of the attorney fees and remand it with directions that she should make an award of attorney fees that are consistent with the law and the facts of the case. Thank you. Thank you. Thank you, counsel. Counsel? May it please the court. I am Michael Angelin. I'm the attorney for the village of Tower Hill. In the event we're not able to reach all of the arguments during our oral presentation, I would request that we just rest on our briefs. I heard opposing counsel just now make a couple of representations to the court that I am completely and utterly befuddled by. Opposing counsel indicated that they were. Could you speak up just a little, please? I'm sorry. Opposing counsel indicated that there was a voluntary modification on the part of the plaintiff in this case to limit the records to seven years. The appellant has made no mention of that in his briefs, and this is the first I have heard about it. I can tell you that I do not recall seeing anything in the record where there was a voluntary modification to seven years. Well, the whole matter was settled by agreement and then entered into an order. Exactly. So there was a modification or a negotiation that took place? There was a negotiation. The village offered six years of records. The plaintiff, after consultation with his counsel, agreed to accept six years of records. That's what occurred prior to trial. But in any event, Your Honor asked earlier regarding the fact that some of the records were previously requested. Well, that's been very clearly outlined in our appellate brief, and the examples of the requested records that were produced are attached to there. But the village's position during this entire case has been consistent from the very first document that was filed. One, our position was that attorney billing records are subject to FOIA. They are releasable under FOIA, but they are subject to an in-camera review to determine if there's any information in there that is attorney-client privileged. Our second position has always been that the plaintiff's FOIA request, one, contain no temporal restrictions, and by virtue of the extent of the records requested, it should be narrow. We have been requesting a narrowing all along. The village is a village of 624 people. It would have required our treasurer to look through 7,200 canceled checks. It would have required her to look through as many as 132 invoices. On those invoices, attorney billing records are a little different because of the attorney-client privilege. We would have had to go through 4,000 to 5,000 lines of billing records to determine the attorney-client privilege. That is, we believe, unduly burdensome on its face. Then our position was that the plaintiff's FOIA request was unduly burdensome by definition under the FOIA statute because it asked for the same records that he had previously received. Again, those are very well itemized in our appellate brief. Once you enter into an agreement and that agreement then becomes part of a judgment, what do you do about the cases and the statute that says if the plaintiff prevails, then attorney fees shall be awarded? How does that work into your argument about undue burden and that type of thing? Well, what has happened here is that the plaintiff wants to report that he prevailed in this case. There was an order in it. Yes, but it was an order that was, and again, the Rock River case says that the order has to compel the production. This was an order that merely memorialized an agreement of the parties. But doesn't an order always compel something? I mean, if there's something to be accomplished by an order and there's a conduct or action that has to take place. I mean, the trial court has jurisdiction over the case. She has to put something in the record, but as she said in her docketing entrance, by agreement of the parties, this many records were going to be produced. But so it was an agreement as opposed to a full-blown trial where the trial court said, okay, I've heard all the evidence. You have to produce these many records. And what happened here is- So are you saying that you didn't have to produce those documents that you agreed to? Oh, no, no. By agreement, because the court memorialized our agreement, we certainly- That becomes a judgment, an order? But it's almost a distinction without a difference here. I think what Rock River is saying, that you go before the court and you fight until the last man is standing, and then the judge finally makes his determination. That didn't happen here. We made an offer that was accepted by the plaintiff here. So it was by agreement of the parties that this matter was resolved. All right. Again, our third point was that it's unduly burdensome on his face because he had already asked for some of the same records. He wanted the same records all over again. But that was not argued before the court because you had an agreement to give him the records. Well, yes, but that was our position all along that it was unduly burdensome. And that is a-I think it's a finding of law. I mean, we agreed to provide the records, but that doesn't have an indication when we get to the point of real condition here, which is the attorney fees. Well, where's the evidence that they had already been produced? When was that presented? That was presented to the court in our motion to deny the plaintiff attorney's fees. That's just an allegation in a motion. That's an allegation in a motion supported by the evidence that was attached to that motion. An affidavit or something? I don't know. I believe there were. But it was FOIA requests that he had previously submitted. We had provided several, many checks written. But, again, he repeated those allegations. And, again, that is, I think, well established in the appellant brief. Finally, and this relates to the issue of attorney fees too, the plaintiff's action over a 10-year period, his repeated allegation of criminal conduct against the village, his actions causing three separate law enforcement investigations of village officials, all proving no wrongdoing, repeated FOIA requests to the village using family members to submit FOIA requests on his behalf. And this FOIA request and FOIA requests to a myriad of other state agencies represents a decade-long attempt by this plaintiff to disrupt the village government. And the use of a- And that's the back story that's very interesting and intriguing. But I don't know how we consider that when you entered into an agreement and the court made that a judgment and then they prevailed on having the documents ordered disclosed. Well, as I said, they cannot have prevailed here. One, the village succeeded in preserving its attorney-client privilege, and the judge redacted our billing records. Two, the village succeeded in having the plaintiff's FOIA request substantially narrowed. Now, again, that was by agreement, but it was significantly less than what he had originally asked for. That is what we've been asking for all along. In fact, in our response to his initial FOIA request, we said, please confer with us. This is too much. Plaintiff did not respond to that and immediately ran to court. Well, the thing I think what we're trying to get at is what is in the record? That is not in the record, is it? The FOIA request is certainly in the record. Sure, I mean, that's not in the record. But what is the – there's no evidence in the record, is there, of all this you're telling us now? That's the problem. Well, we came to court at the motion for attorney's fees. Right. I asked that all this information we had been presenting be submitted in evidence. The judge's response to me at that point in time was, it's already in the record. And that is in our record. I don't frankly know. It must have been in the transcript of that particular hearing. I think we did order that transcript of that particular hearing. Because we can only consider what's in our record. Yes, I understand. I think it's all there. But, you know, I can't speak with total authority on that issue, Your Honor. The other issue was, again, the records that had previously been produced. And the plaintiff has never addressed that issue, that the request was unduly burdensome on its face and, by definition, under FOIA. But anyhow, the plaintiff maintains that he won this litigation. The question is how. The Rock River Times case held that the production of requested records had to be compelled by court order. And if that didn't happen, no attorney's fees were due. Now, upon discovering the Rock River case, the appellant has made a mighty effort to try to indicate that this was by agreement. Excuse me, but this was a compelled court order. And it wasn't. It was an order merely memorializing the agreement by the parties. So it's an unenforceable order is what you're saying. No, not at all, Judge. We would not have ignored the judge's order to produce those records. But, again, this was not an order compelling the production of the records after a full-blown piece of litigation. This was just a memorialization of what the parties had agreed to. And that appears repeatedly throughout the judge's docketing entry. In other words, this has to be judicially sanctioned relief, judicially enforced relief. And, again, an agreement by the parties is not judicially sanctioned or enforced. The number of records that were produced were agreed upon by the parties, and that was substantially less than what the plaintiff. If the plaintiff had conferred with us before he ran to court, we may have very well been able to come to this conclusion prior to getting into court. Well, and then let's back it down. Is there a judgment in this case? Well, that is a good question. I am not sure. Did the court say that it finds in favor of the plaintiff in the amount of $6,500 or not? In her docketing entry that related to the award of attorney's fees, the judge simply recited that the plaintiff had contends that they prevailed in this litigation. She recited it. The plaintiff contends that they prevailed. She did not say, I agree, or she did not say the court agrees or anything of that nature. She just merely stated the plaintiff's position. And then right after that, she went on to say that the number of records produced were far less than what was requested. That was one of the criteria that she listed as to why she reduced the attorney fees in this case. In other words, the plaintiff wanted a lot of stuff. He was unreasonable. He didn't get it. The request was narrowed to a reasonable level. Well, you're saying, though, well, I understand the problem. You said that she reduced the amount. When you're saying there's two things, she reduced it or there was an agreement to reduce it, one or the other. Well, there was an agreement to reduce it. No, no, no. I'm sorry. There was an agreement to reduce the records, but I'm talking about the issue of attorney's fees. She reduced the attorney fees. So there was no agreement as to attorney fees. No, there was not at all. So then there had to be a judgment entered by the court that the attorney fees were $6,500. That's what she ordered to be produced. So there is a judgment for $6,500. Okay. The second factor that she listed there was that the litigation took way too long and was far too expensive. That mitigates against the plaintiff here. It was his issue that caused this litigation to extend almost four years. The record is replete. Our argument is cross-appellant, is that he should receive zero fees because of his amazing obstruction of the judicial process during trial. He refused to answer interrogatories. He hid documents, and that produces that special circumstance awarding the award no attorney fees. But as I look for this again, you withdrew that petition with respect to compelling answers. Right. And request to admit. Oh, no. No, Your Honor. The petition that was withdrawn was our motion to deem facts admitted by virtue of the plaintiff's failure to answer our verified or to respond to our verified answer. All right. We submitted a verified answer. Plaintiff failed to respond and affirmative defenses along with it. Plaintiff failed to respond. Now, in order to facilitate settlement and to end this litigation, the village not only made an offer to the plaintiff to cut the number for a substantial number of records, the village also agreed to withdraw that motion. But I argue, and that's our argument of the pleadings here, I argue that once a plaintiff fails to answer affirmative defenses, those become judicial admissions. That's a most unusual argument, I might add, once you've withdrawn that. Well, we withdrew it before the trial court, but we did not withdraw our answer in affirmative defenses. We merely withdrew a motion to deem those facts admitted. The point being is that the facts were already judicial admissions in the record. That was done in over with when the plaintiff failed to answer those affirmative defenses. And no matter what we do, unless we agree to withdraw the affirmative defenses, no matter what we do, that concluded that that is evidence that not only the court could use but the appellate panel could use to show. But the court didn't use it because you withdrew it. I withdrew the motion, Your Honor, but the fact that those remain as judicial admissions in the records I think is not altered by withdrawing the motion. In other words, at the moment the plaintiff failed to answer those, they became judicial admissions that are permanently part of the record. The court doesn't have to determine that. Pardon? The trial court does not have to determine that. No, I don't believe that they do. The issue is, in reading the case law, not only are they just admissions, but they bear the strength of a judicial admission, and that's exactly what happened here in this case. What's your best case defining pre-bail? Okay, I'm sorry. Go ahead. What is your best case defining pre-bail? Pre-bail. Pre-bail means? Well, we have only two that discuss what pre-bail means. We have the Rock River case and we have the Uptown People's case, the Uptown People's Lawsuit. And Rock River discusses what pre-bail means. And it discusses the change in the statute from the term substantially pre-bail to pre-bail. And the Rock River case said that that means that a plaintiff can't just get close. It has to win outright. It has to have a court order. It's got to have a court order, but a court order that is a judicial sanction that compels the production of the records. Okay, here we just didn't have that. This was merely an agreement of the parties. Well, I think that's part of the problem here. If the two parties reach an agreement and it's put in the form of an agreed court order, the court has sanctioned that agreement.  In this situation, it sounds like one could make a reasonable argument that this was sanctioned by the court, but there was no compulsion to live up to the agreement by the court, and the court always has the ability to enforce its own orders, unless it's – well, essentially that proposition stands. So it seems to me that since it was voluntarily applied for and you're now arguing about an award of attorney's fees, you're in the area of an exercise of discretion. And the question that we have to go back to to see whether the court could properly exercise its discretion on any award of attorney's fees is whether a party will prevail. Well, I think if the Rock River case is studied, you'll – at least I saw a distinction between an order that compelled the government to produce documents after the fight, so to speak. Thank you, counsel. Thank you. Counsel? Your Honor, a couple of – Before you start, can I get squared away here a little bit? There was – do you contend there was an agreement as to attorney fees? No, there was not an agreement as to attorney fees. That was a finding by the trial court. That was a finding by the trial court. The attorney fees were $6,500 and issued judgment thereof. Correct. Okay. Thank you. Okay. I'll get back to that. The points that I wanted to make to you pretty briefly are that the statistical data that counsel has provided you about all the stuff about Mr. Perdue and all that other stuff that you asked about in the record, as far as I know, it's not – none of that's in the record. There have been those allegations that are made repeatedly in the courtroom, and if you read the transcript, you'll see it's just almost ad nauseum. But I don't see any affidavit, any testimony of anybody that verifies any of that stuff. When they talk about – when he talks about an amazing obstruction of the judicial process on my client's behalf, whether there's obstruction of the judicial process on my client's behalf or not really isn't the issue here. The issue here is whether there was a production of records that was required by the trial court after a request was made under the Freedom of Information Act. And there's a reasonable relatedness to the relief that was requested. Absolutely. Isn't that what the law requires? Absolutely. So you don't just prevail and get whatever you can show necessarily was your time spent, even if that's not questioned. I mean, it still has to reasonably relate to the relief requested. Sure. It would have to reasonably relate to the relief that was requested. And I think when you look at the record, you'll see that, in fact, the case that I was referring to before is Duncan Publishing Company v. City of Chicago in 1999. And it's referenced in our brief as the one that talks about the fact that an award of attorney fees in a Freedom of Information Act case is not meant to be a reward, nor is it meant to be a punishment. It's meant to relieve the petitioning plaintiff of the obligation of having to look at his finances before he goes and tries to get the records that he has an absolute right to have under the statute. And it's the municipality, in every case, it's the municipality that controls that outcome. The municipality either discloses the records or they don't. If they have a legitimate basis for not disclosing the records, they don't disclose the records and the court refuses it. If they don't have a legitimate basis for refusing to disclose the records, then the court orders them to refuse to disclose the records. Well, here in camera, the court redacted some and I guess refused some, but those were already part of what was agreed to? Well, the court didn't refuse any. They didn't. The court redacted some but didn't refuse any and the redactions were related to apparently attorney-client privilege matters, which really, I don't think we ever really got into play. But the entirety of what was given to the court to review was agreed to? Right. Okay. Now, we get back to this deal about an agreement. There was never an agreement with respect to attorney fees. Right. There was discussion, although it is not a part of your record, as to how we were going to agree to limit, voluntarily limit, the request for the production of certain documentation without prejudicing the plaintiff's right to recover his attorney fees. And we did have that discussion. But what eventually happened was, and what the court identified in the record two ways. One is by a summary of what happened after it happened and the other is just by virtue of the nature of the process as it went along. What happened was there was an agreement to voluntarily modify the request to documents that proceeded from a five-year period from the date of the request back in time. Those documents were then going to be reviewed by the court to determine whether or not they had to be disclosed. Whether or not any of the defendant's defenses, affirmative defenses, or any requirement of the statute would preclude it. That was a determination that the trial court had to make. And then after that, if the trial court decided that they needed to be disclosed, obviously if they didn't, that would end the inquiry. If the trial court decided that the documents would be disclosed, then the question became, did any of it need to be redacted to protect the attorney-client privilege? Now, we know that that's the case because when we look at the record, what we see in the record is that we had a hearing. There is an agreement. The records are produced to the court. The court reviews them, makes a determination that they should be disclosed. Actually sits on the bench at one time and says, I'm going to hand these to Mr. Graham. At which point, counsel for the defendant says, well, wait a minute, Judge, we think that some of that needs to be redacted to protect our attorney-client privilege. At which point, may I finish, Your Honor? Yeah, finish. At which point, the court says, okay, provide me what you perceive ought to be redacted. I'll take a look at it. I'll make that decision, and then I'll produce whatever it is that's got to be produced, which is exactly what the judge did. Now, at the hearing, that same hearing, at the beginning of the hearing, the judge specifically on the record indicated that that's what she had done. She said, that then leaves us. And it's in the brief, so I won't recite it. Thank you, Your Honor. Thank you, counsel. Okay, we appreciate the briefs and arguments. Counsel will take the case under review. Thank you.